IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DENA B.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:20cv00585 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Dena B. ("Dena") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Dena had previously sought judicial review of a final decision denying her claim for disability benefits and this court remanded her case to the Commissioner for further administrative proceedings. Dena alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) assess her mental impairments including determining her RFC using a function-by-function analysis; and (2) assess her allegations regarding her symptoms. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

**RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 20) and **DENYING** Dena's Motion for Summary Judgment (Dkt. 15).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Dena failed to demonstrate that she was disabled under the Act.³ Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

³ The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## **CLAIM HISTORY**

Dena filed for SSI in June 2014, claiming that her disability began on June 18, 2014[4], due to impairments including depression, obsessive-compulsive disorder, and anxiety.[5] R. 374–81, 393. In June 2017, after holding a hearing, ALJ James Grimes issued an unfavorable ruling denying Dena's claim. R. 212–22. The Appeals Council denied Dena's request for review and Dena filed a civil action in this court challenging that decision. See Dena B. v. Berryhill, Case No. 7:18cv141.

This court reversed the Commissioner's decision and remanded Dena's case for further administrative proceedings on September 24, 2019. The Appeals Council then vacated ALJ Grimes' decision and sent the case to ALJ David S. Lewandowski for rehearing, to address additional evidence, and to issue a new decision. R. 836. ALJ Lewandowski held a hearing on May 6, 2020. R. 759–89. Counsel represented Dena at the hearing, which included testimony from vocational expert Robert Jackson. The ALJ issued a second unfavorable decision on June 9, 2020, analyzing Dena's claim under the familiar five-step process[6] and denying her claim for benefits. R. 734–50.

---

[4] Dena initially alleged a disability onset date of October 30, 2013 but changed her alleged onset date at the hearing with the ALJ to June 18, 2014. R. 392, 734.

[5] Dena also alleged medical conditions of headaches, neck pain, right finger pain, difficulty being near and getting along with others, cutting herself, and bilateral leg pain. R. 393.

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curium) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ found that Dena suffered from the severe impairments of lumbar degenerative disc disease, chronic obstructive pulmonary disease ("COPD"), anxiety, depression, and polysubstance use disorder.[7] R. 736. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 737. The ALJ specifically considered listing 1.04 (spinal disorders), listing 3.02 (chronic respiratory disorders), listing 12.04 (depressive, bipolar, and related disorders), and listing 12.06 (anxiety and obsessive-compulsive disorders). R. 737–38. The ALJ found that regarding her mental impairments, Dena had a mild limitation in understanding, remembering, or applying information, and moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 738–39.

The ALJ concluded that Dena retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 740. Specifically, Dena can understand, remember, and carry out simple instructions, perform simple tasks, and make simple work-related decisions. She can have occasional interaction with others and adapt to occasional changes in a customary workplace setting, but should avoid fast-paced work, meaning work requiring rapid movement with a high productivity level, tight deadlines, or quick turnaround, such as an assembly line worker or a server in a crowded restaurant. Dena can maintain concentration for at least 2-hour segments, with customary breaks, on a sustained basis, and is expected to be off task 10% of the workday. Dena should also avoid concentrated exposure to pulmonary irritants.

The ALJ determined that Dena could not perform her past relevant work as a hand packer, but that she could perform jobs that exist in significant numbers in the national economy, such as mail clerk, marker, and photocopy machine operator. R. 749. Thus, the ALJ determined

---

[7] By the time of the ALJ decision in June 2020, Dena was an individual closely approaching advanced age as defined by the Regulations. R. 748.

4

that Dena was not disabled. R. 750. Dena filed for direct review of the unfavorable ALJ decision in this court.[8] See 20 C.F.R. § 404.984(d); Massey v. Saul, No. 1:19 CV 152 WCM, 2020 WL 4569606, at *1 (W.D.N.C. Aug. 7, 2020) (noting that "When a case is remanded by a federal court, the subsequent decision of the ALJ will become the final decision of the Commissioner unless the Appeals Council assumes jurisdiction over the case").

## ANALYSIS

Dena alleges that the ALJ failed to both properly assess her mental impairments, including determining her RFC using a function-by-function analysis, and assess her allegations regarding her symptoms.

### A. Medical History Overview

1. Mental Impairments

Dena has a history of mental health complaints and treatment, including anxiety, obsessive-compulsive disorder, post-traumatic stress disorder, paranoia, depression, and hallucinations, and has been prescribed medication and undergone counseling.[9] Dena has also been diagnosed with cocaine and alcohol use disorder and she completed a one-month inpatient detox program in June 2019. On discharge, Dena was diagnosed with severe alcohol use disorder, severe cocaine use disorder, recurrent major depressive disorder, and unspecified anxiety disorder. R. 1213. At the hearing, Dena testified that she had, had some relapses

---

[8] The Notice of Decision – Unfavorable, dated June 9, 2020, from the ALJ states:

If you do not file written exceptions and the Appeals Council does not review my decision on its own, my decision will become final on the 61st day following the date of this notice. After my decision becomes final you will have 60 days to file a new civil action in Federal district court. You will lose the right to a court review if you do not file a civil action within the [time period provided].

R. 731–33.

[9] In her brief, Dena focuses on alleged errors related to her mental impairments; thus, I likewise focus on mental impairments in this overview.

following the detox program, and had last used cocaine approximately a month prior to the hearing and alcohol the week prior to the hearing. R. 777. In his opinion, the ALJ observed that generally, Dena's mental health symptoms improved with medication, and she suffered increased symptoms when she did not take her medication as prescribed. R. 747.

 2. Medical Opinion Evidence

In November 2014, state agency psychologist Linda Dougherty, Ph.D., reviewed Dena's records and determined that she had mild difficulties in maintaining social functioning and moderate difficulties with maintaining concentration, persistence, or pace. R. 258. The ALJ gave this opinion some weight. R. 745. In March 2015, state agency psychologist David Deaver, Ph.D., also reviewed Dena's records, determining Dena had moderate difficulties in maintaining both social functioning and concentration, persistence, or pace, and noting she was capable of simple, unskilled, non-stressful tasks on a consistent basis and could "maintain at least two-hour intervals of concentration." R. 269, 271–72. The ALJ gave Dr. Deaver's opinion great weight. R. 745–46.

 **B. Mental Impairments under SSR 96-8P**

Dena argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Dena asserts that the ALJ failed to explain how the RFC accommodates her moderate limitations in interacting with others and concentrating, persisting, or maintaining pace, failed to explain his conclusion that Dena would be off task 10% of the workday, and wrongly concluded that Dena only experiences hallucinations when she does not take her medications, including by failing to cite to any evidence past March 2017. Dena also complains that the ALJ's RFC findings "only addresses the skill level of work and not whether

6

[Dena] would be able to sufficiently maintain concentration, persistence, or pace to perform substantial gainful activity on a sustained basis over an eight-hour workday." Pl.'s Br. at 24, Dkt. 16. The Commissioner counters that the ALJ fully explained the mental RFC including, as directed in the court's remand order, explaining what he meant by production rate pace and confirming Dena could work on a sustained basis. R. 823.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in

7

concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite her moderate limitations in concentration, persistence, or pace, and in interacting with others, Dena is capable of performing the basic mental demands of light work, with the specified accommodations. Regarding concentration, persistence, or pace, the ALJ acknowledged Dena's obsessive tendencies, such as checking the stove and locking the door, but emphasized her attention and concentration were fair or good when taking her medication as prescribed. R. 739. The ALJ explained why Dena's moderate limitations in concentration, persistence, or pace, and interacting with others did not translate into a limitation in the RFC beyond that imposed:

> [Dena] did often complain of depression and anxiety with rare complaints of delusions or hallucinations, which only occurred when she had not been taking her medications. Therefore, . . . [Dena] is limited to performing simple tasks, and she needs work with regular employer-provided breaks every two hours. [I] have also added a limitation that [Dena] is expected to be off task up to 10% of the workday because hearing level evidence shows that [Dena's] mental symptoms, often related to drug and alcohol use, are

8

> a little worse than the evidence at the state agency level. These short bouts of greater mental symptoms could cause her to be off task up to 10% of the workday. Additionally, [I] ha[ve] limited [Dena] to a workplace with only occasional changes, which is consistent with Dr. Deaver's opinion that [Dena] would require a low stress, static environment.

R. 746.

The ALJ further explained that his RFC limitation of "avoiding fast-paced work," would accommodate Dena's anxiety, and was consistent with Dr. Deaver's opinion regarding a low stress, static environment, as a "fast-paced workplace with frequent changes would exacerbate her anxiety." Id. The ALJ went to significant lengths to explain what he meant by "fast paced work," thus correcting the error noted by the District Court in its previous remand, defining it as "work requiring rapid movement, high productivity level, tight deadlines, or quick turnaround, such as an assembly line worker or a server in a crowded restaurant." Id. Likewise, the vocational expert understood what the ALJ meant by the term, as the ALJ provided this same explanation during the hearing. R. 784. Thus, this case is distinguished from those where the ALJ failed to adequately explain the meaning of the terms such as "production rate" or "demand paced." See e.g. Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019), as amended (Feb. 22, 2019); Perry v. Berryhill, 765 Fed. App'x 869, 872 (4th Cir. 2019) (unpublished).

The ALJ also explained his RFC limitation that Dena should have only occasional interaction with others, noting that Dr. Deaver indicated she should have minimal interaction with others, and that she occasionally told her treatment providers she did not like being around others and had difficulty getting along with others at times, but also reported both socializing with her friends and having a boyfriend. R. 746. Likewise, she went out in public to shop, was cooperative on examination with her providers, and enjoyed spending time with her son. R. 738–

9

39. On balance, the ALJ determined the record showed Dena is capable of occasional interaction with others. R. 746.

Contrary to Dena's arguments, the ALJ here explained his reasoning and the RFC, including references to the medical records and the opinions, and corrected errors the District Court found with the prior ALJ opinion, including a failure to explain what production rate pace means, and to establish that Dena can work on a sustained basis. R. 823. The ALJ specifically wrote that Dena can maintain concentration for "at least two-hour segments with customary breaks on a sustained basis." R. 740. This is supported by substantial evidence in the record, as discussed above, including Dr. Deaver's opinion that Dena could maintain concentration for at least two-hour intervals, to which the ALJ gave great weight, and Dena's mental status findings that usually showed normal memory, attention, and concentration. R. 745–46.

Finally, the ALJ's consideration of Dena's hallucination complaints does not merit remand. On balance, the ALJ accurately accounts for Dena's hallucinations. The ALJ explains that her mental symptoms, including "rare complaints of delusions or hallucinations," require her to perform only simple tasks, with employer-provided breaks every two hours, and an expectation that she may be off task up to 10% of the workday. The ALJ specifically acknowledged Dena's testimony that she "has hallucinations two to three times a year," but emphasized that she "often reported adequate symptom control from psychiatric medications when she took them as prescribed." R. 739. This is an accurate description of the medical evidence, which generally shows that her medications helped with her hallucinations, and her hallucinations were worse when she did not take her medication as prescribed. R. 566, 569, 612. The records Dena points to as documenting continued hallucinations even while taking medication generally show providers attempting to find the right medication and dose, including

10

increasing her Seroquel to address the hallucinations. See e.g. R. 573 (increasing Seroquel due to visual hallucinations and paranoia). As noted by the ALJ, these records also show that she later admitted to not taking her medications during certain periods of worsening symptoms. The ALJ discusses a portion of the time period referenced by Dena as follows:

> While [Dena] reported hallucinations at her intake in June of 2014, by August of 2014, with medication, she reported no hallucinations and in October of 2014 she reported that the Seroquel was helping. She became symptomatic again in November and December 2014 but in January of 2015 she admitted that she had not been taking her medications as prescribed.

R. 747. Thus, it is clear from the ALJ's discussion of the record that he understood the interplay between her mental health symptoms, including hallucinations, and her medication, and, further, that he accommodated her mental health symptoms in the RFC. Accordingly, I recommend finding that substantial evidence supports the ALJ's RFC determination.

### C. Subjective Allegations

Dena argues that the assessment of her allegations is not supported by substantial evidence. Dena asserts that the ALJ "failed to acknowledge that [Dena's periods of improvement] were temporary and fleeting and [her] symptoms remained disabling." Pl.'s Br. at 29, Dkt. 16. Dena also argues that the ALJ only cites evidence through 2017 to support his conclusion that Dena's symptoms improved, and ignored evidence showing she was depressed and anxious beyond 2017. Additionally, Dena argues that the ALJ did not explain how her ability to answer questions at her disability hearing, or her activities of daily living, including driving to appointments, using public transportation, caring for her son, and cooking and cleaning, undermined her allegations.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms.

11

Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[10] First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[11] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a discussion of Dena's medical history, as well as her allegations, and the ALJ adequately supported his finding that the Dena's allegations were not entirely consistent with the medical evidence and other evidence in the record. In fact, the ALJ acknowledges that the record "largely supports" Dena's difficulties staying on task, hallucinations, medication side effects, lack of energy, and difficulty getting along with others,

---

[10] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[11] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

but just not "to the degree alleged." R. 747. In support, the ALJ points to Dena's treatment record showing a positive response to medication, including periods where she became symptomatic again, and only later admitted she had not been taking her medications as prescribed. Id. The fact that Dena can point to records showing she continued to be depressed and anxious after 2017, does not warrant a remand. The ALJ acknowledged Dena's depression and anxiety, finding both to be severe impairments. Also, in direct contradiction to Dena's claim that the ALJ ignores her medical record after 2017, the ALJ discussed Dena's medical record through July 2020. R. 743–44. For example, the ALJ noted that in February 2018, Dena reported to her doctor that "she felt more anxious and depressed because she had not been taking her medication regularly," in February 2019 she again complained of depression and "admitted she had not taken Seroquel or Lexapro for four months," and in February 2020 she again complained of depression, anxiety, and cocaine use and "admitted she had not taken her psychiatric medication since July 2019." R. 743–45.

Finally, this case is distinguished from Brown, where the Fourth Circuit concluded that the ALJ had committed multiple errors, including failing to acknowledge the extent of the daily activities of living, writing:

> With respect to the first reason for the adverse credibility finding, the ALJ noted that Brown testified to daily activities of living that included "cooking, driving, doing laundry, collecting coins, attending church and shopping." See Second ALJ Decision 11. The ALJ did not acknowledge the extent of those activities as described by Brown, e.g., that he simply prepared meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry and looked at coins, and, by the time of the second ALJ hearing, had discontinued regular attendance at church and limited his shopping to just thirty minutes once a week. Moreover, the ALJ provided no explanation as to how those particular activities—or any of the activities depicted by Brown—showed that he could persist through an eight-hour workday.

13

873 F.3d at 263. Unlike in Brown, the ALJ here pointed to more than Dena's daily activities to discount her subjective allegations.[12] Beyond these activities of daily living, the ALJ noted that Dena's allegations were inconsistent with her medical records, including that when she was taking her medications consistently Dena's mental status examinations "typically revealed that she was well groomed, with no hallucinations or delusions, with coherent, relevant and goal oriented thought processes, with intact recent and remote memory with good attention and concentration." R. 747–48. Finally, the ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Dena's subjective complaints with substantial evidence, and that Dena is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's

---

[12] Also, unlike in Brown, the ALJ here did not fail to consider any doctor's opinions, or wrongly credit a psychiatric medical expert's testimony over the "consistent opinions of [five] treating and examining sources" who found disabling physical limitations. Brown, 873 F.3d at 266.

motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: December 1, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge